THE UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| MAUREEN COLVIN,<br>Plaintiff<br><br>v.<br><br>GRACE BAILEY NAVIGATION COMPANY, INC., In Personam, and the SCHOONER GRACE BAILEY, Official No. 085754, her tackle, apparel, and appurtenances, In Rem,<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | New Civil Action |

**<u>PLAINTIFF'S VERIFIED COMPLAINT AND JURY TRIAL DEMAND</u>**

**Parties**

1. The Plaintiff, Maureen Colvin (hereinafter "Plaintiff"), is a resident of the Town of Scituate, County of Norfolk, Commonwealth of Massachusetts.
2. The Defendant, Grace Bailey Navigation Company, Inc., Schooner Grace Bailey, Official Number 085754, (hereinafter "Grace Bailey") is a business and vessel operating in the Town of Rockland, County of Knox, State of Maine.

**Jurisdiction/Venue**

3. The Court has subject matter jurisdiction as this is a case in Admiralty brought under general maritime laws of the United States.
4. The Court has personal jurisdiction over the Defendant as the vessel embarked from Rockland, Maine, and the defendant corporation is headquartered in the State of Maine.
5. The Court has jurisdiction over the vessel in-rem as the vessel is within the district and in all likelihood will be in the district during the pendency of this action.
6. Jurisdiction is also based on diversity of citizenship pursuant to 28 U.S.C. § 1332 and tort laws for the State of Maine. This action is brought between parties of different states and the amount in controversy is likely to exceed Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.
7. Venue is appropriate as the occurrence occurred within the navigable waters of the State of Maine.

## Factual Allegations

8. The Plaintiff realleges and reavers paragraphs 1 through 7 as if expressly set forth herein.
9. On Friday, October 6, 2023, the Plaintiff set said as a passenger on the vessel Grace Bailey on a four-day excursion around Penobscot Bay.
10. The voyage departed from Rockland, Maine.
11. On board was the Plaintiff, along with 32 other people, including 25 other passengers and 7 crew members.
12. On Monday, October 9, 2023, approximately ninety minutes after the completion of breakfast, the Plaintiff sat in the rear of the vessel, near the bulkhead and in proximity to the entrance of the ladder descending to the Plaintiff's cabin.
13. Suddenly and with no warning, the main mast cracked and collapsed.
14. The mainmast suffered severe internal decay attributed to fungal growth. This deterioration critically compromised the structural integrity of the mast, rendering it vulnerable and ultimately leading to its failure under stress.
15. The industry standard requires the use of old growth Douglas Fir masts, which includes the vital treatment of the sapwood shell to protect the heartwood from decay.
16. In the case of the masts of the Grace Bailey, nearly all of the sapwood was eliminated during the lathing process. Furthermore, the remaining sapwood at the upper section of the mast was removed during the final shaping.
17. The treatment of the sapwood shell is crucial for preventing decay. This process involves pressure treatment after appropriate seasoning to guarantee that the interior of any seasoning checks receives the vital treatment it requires.
18. The Grace Bailey masts did not receive anti-fungal treatment, resulting in the heartwood being left vulnerable to fungal colonization.
19. The Grace Bailey masts had significant and sustained moisture intrusion.
20. The inadequate external inspection methods and procedural limitations consisted of inspection lacking depth.
21. Many inspections were conducted at deck level, which only allowed for the visual inspection of masts.
22. Finally, the internal inspection programs and crew training implemented by the owners and operators fell significantly short of required standards.

23. This lack of training by Grace Bailey Navigation Company resulted in a focus on superficial maintenance practices, further compounding the underlying issues.
24. The Plaintiff was abruptly impacted from above by a sail and subsequently felt the weight of the mast.
25. The Plaintiff was propelled down approximately eight feet of stairs, resulting in a violent and painful impact with the floor below deck.
26. The Plaintiff holds a United States Coast Guard (hereinafter "USCG") Master Captain's license and possesses certification in Cardiopulmonary Resuscitation (CPR).
27. After experiencing immediate and acute onset physical injury, the Plaintiff proceeded to ascend the ladder in an effort to assist fellow passengers upon hearing their urgent cries for help.
28. The Plaintiff administered medical care to passengers onboard the vessel.
29. The Plaintiff discovered Dr. Emily Mecklenburg positioned awkwardly on the deck of the vessel with significant bleeding from her head.
30. The Plaintiff observed fellow passengers performing CPR on Dr. Mecklenburg; however, she perceived that Dr. Mecklenburg was beyond recovery.
31. In the midst of the panic and urgent attempts to assist Dr. Mecklenburg, the Plaintiff noted that the captain appeared to be in a state of shock, rendering no care or service to the passengers.
32. The Plaintiff observed the captain walking to the bow and standing there while the event was unfolding.
33. Upon arrival of the USCG, they assumed control of the situation.
34. Dr. Mecklenburg and other individuals were subsequently removed from the vessel for emergency medical services.
35. The Plaintiff and others remained on the vessel in silence as it was towed to Rockland, Maine, despite serious injury.
36. Due to significant pain and discomfort, the Plaintiff was unable to walk to her vehicle.
37. A crew members took possession of the Plaintiff's car keys and retrieved the Plaintiff's motor vehicle for her.
38. The Plaintiff drove away while suffering from significant emotional and physical pain.

**COUNT I: MARITIME NEGLIGENCE & GROSS NEGLIGENCE**
**DIRECT AND VICARIOUS LIABILITY**
**(v. Grace Bailey Navigation Company, Inc.)**

39. The Plaintiff realleges and reavers paragraphs 1 through 38 as if expressly set forth herein.
40. The Defendant had a standard tort duty of care to its passengers aboard its vessel under general maritime law.
41. The Defendant is also a "common carrier."[1]
42. As a common carrier, the Defendant also has a heightened duty of care to passengers aboard its vessel.[2]
43. The Defendant, a common carrier, also undertakes an absolute duty to protect passengers against the negligence of its own Captain(s), Crew, Staff, Employees, acting within the general scope of their employment.[3]
44. The Defendant, as a common carrier, is also required to provide seaworthy and adequate equipped vessels.[4]
45. The Defendant, as a common carrier, has the "*highest degree of care and diligence in providing for the safety of passengers*."[5]
46. At all relevant times, Grace Bailey owed a heightened duty of care to the Plaintiff during the voyage.
47. The Defendant, as a common carrier, had an essential duty to secure high-quality wood for its masts, apply the necessary treatment processes, and uphold the structural integrity of its vessel and appurtenances.

---

[1] Martin v. Cape Fear, Inc. 2004 U.S. Dist. LEXIS 7722 see also The Huntress, 1840 U.S. Dist. LEXIS 26, 12F. Cas. 984, 2 Ware 89, 4 W.L.J. 38

[2] Ramsay v. Frontier, Inc., 2020 U.S. Dist. LEXIS 151176, 2020 WL 4557545 citing Restatement (Second) of Torts § 314A(1) & (2) (explaining that innkeeper's duty to his guests is the same as that of a common carrier to its passengers in terms of protection against unreasonable risk of physical harm). See also Liverpool and Great Western Steam Co. v. Phenix Ins. Co., 129 U.S. 397, 440, 9 S. Ct. 469, 32 L. Ed. 788 (1889). Other courts have used various language in imposing similarly high standards: Pennsylvania Co. v. Roy, 102 U.S. 451, 456, 26 L. Ed. 141 (1880), Stokes v. Saltonstall, 13 Pet. 181, 38 U.S. 189, 191, 10 L. Ed. 115 (1839) (duty to transport passengers safely, "[as] far as human care and foresight can go"); Allen v. Matson Navigation Company, 255 F.2d. 273, 277 (9th Cir. 1958) ("extraordinary vigilance and the highest skill"); Moore v. American Scantic Line, 121 F.2d, 767, 768 (2nd Cir. 1941) ("as much skill, care, and prudence as an exceedingly competent and caution man would bring to the task in like circumstances"); Kitsap County Transp. Co. v. Harvey, 15 F.2d 166, 167 (ith Cir. 1926) ("high degree of care"); Gardner v. Panama Canal Co., 115 F. Supp. 687 (D. Canal Zone 1953); Robinson, id. at 553; "very high degree of care, prudence and foresight"); The Arabic, 34 F.2d 559, 562 (S.D.N.Y. 1929) ("highest degree of care")

[3] New Jersey S.B. Co. v. Brockett, 121 U.S. 637, 7 S. Ct. 1039, 30 L. Ed. 1049, 1887 U.S. LEXIS 2082

[4] Rizzo v. Winnisimet Co., 217 Mass. 19, 104 N.E. 363, 1914 Mass. LEXIS 1156

[5] Compagnie Generale Transatlantique, etc., 392 F. Supp. 973, 1975 U.S. Dist. LEXIS 12825

48. Additionally, the Defendant was obligated to conduct thorough inspections and provide adequate training to its crew.
49. The Defendant's failure to fulfill these responsibilities created a foreseeable risk: that one or all of the vessel's masts could fracture, break, or become inoperable.
50. The Defendant retained the services of a professional marine surveyor to conduct an inspection of the vessel.
51. The Defendant elected to only have the professional marine surveyor conduct a limited inspection from deck level, declining an aloft inspection of the masts.
52. Should the Defendant have initiated a request for a thorough and comprehensive inspection by the professional marine surveyor, the surveyor would have identified material deficiencies present in the masts.
53. Unfortunately, this foreseeable risk of harm to the passengers aboard the vessel resulted in the Plaintiff being injured while aboard the vessel.
54. The vessel was unseaworthy as the Defendant failed to provide basic safety measures.
55. The Defendant breached their duties in the following manners:
    a. Failure to purchase the proper wood for the masts;
    b. Failure to conduct the proper treatment of the masts;
    c. Failure to inspect and/or survey the vessel and appurtenances;
    d. Failure to conduct the proper training for the crew members;
    e. Failure to warn the Plaintiff of the dangers associated with the old, rotting masts; and
    f. In other ways as will be discovered through discovery and proven a trial.
56. The Defendant was <u>grossly negligent</u> in its reckless disregard for the safety of its passengers such as the Plaintiff.
57. The Defendant was grossly negligent in the following ways:
    a. Failure to adhere to the most basic safety standards;
    b. Failure to use the most basic safety equipment;
    c. Failure to keep the vessel in a safe and seaworthy condition for its passengers;
    d. Failure to warn the Plaintiff of the dangers associated with the old, rotting masts; and
    e. In other ways as will be discovered through discovery and proven at trial.
58. As a direct and proximate result of the negligence, gross negligence, and unseaworthiness of the Defendant, its vessel, and its crew, the Plaintiff sustained severe personal injuries, suffered great physical and emotional pain rendering her disabled, accumulated medical and hospital bills and other out of pocket expenses. All will be proven at trial.

**COUNT II: ENFORCEMENT OF MARITIME TORT LIEN**
**(v. Schooner Grace Bailey Pursuant to Supplemental Rule C)**

59. The Plaintiff realleges and reavers paragraphs 1 through 58 as if expressly set forth herein.
60. The Plaintiff's lien arises from the Defendant's failure to properly maintain and operate the Schooner Grace Bailey.
61. The Defendant at all relevant times, owned and controlled the vessel.
62. The Defendant had a duty to provide a safe and seaworthy vessel, which was competently manned equipped and fit and proper for service in which she was engaged.
63. The vessel was unsafe and unseaworthy in the following ways:
    a. The vessel and safety equipment were not properly maintained
    b. The main mast was defective;
    c. The vessel did not have policies and procedures in place for communication, safety, maintenance, and/or inspection; and
    d. In other ways as will be proven through litigation and at trial.
64. The Plaintiff seeks to enforce said lien in rem per Supplemental Rule C against the vessel and/or substitute security and seeks that issuance of and delivery of process in rem be held in abeyance pending further application, reserving the right to arrest said vessel under Rule E.
65. As a direct and proximate result of the Defendants vessel's unseaworthiness, the Plaintiff suffered personal injuries, physical and emotional pain, medical bills, and other out of pocked expense.

**PRAYER FOR RELIEF**

Wherefore, the Plaintiff, Maureen Colvin, demands judgment against the Defendant for all damages allowable by law together with interest, costs, and attorney's fees.

**VERIFICATION**

I, Maureen Colvin, declare under penalty of perjury that I have read the foregoing Verified Complaint and that the factual allegations contained therein are true and correct to the best of my knowledge, information and belief.

Executed on October 7, 2026

*/s/ Maureen Colvin*___________
Maureen Colvin

Plaintiff,
By her attorneys,

Dated: October 7, 2026

***/s/ Joseph M. Orlando, Jr., Esq.***
MA BBO # 680995 (pro hac vice)
***/s/ Joseph M. Orlando, Sr.***
ME Bar # 007163
Orlando & Associates, PC
1 Western Avenue
Gloucester, MA 01930
Ph: 978-283-8100
Fx: 978-283-8507
jmorlandojr@orlandoassociates.com